No. 03-844

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 208

KAY WIMAN,

        Petitioner and Appellant,

   v.

MONTANA DEPARTMENT OF LABOR
AND INDUSTRY, BOARD OF LABOR APPEALS,

        Respondent and Respondent.


APPEAL FROM:    District Court of the Sixteenth Judicial District,
                    In and for the County of Fallon, Cause No. DV 2003-28
                    The Honorable Joe L. Hegel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Kay Wiman, *pro se*, Baker, Montana

      For Respondent:

          Marieke Beck, Special Assistant Attorney General, Montana Department of
         Labor and Industry, Helena, Montana; Albert R. Batterman, Fallon County
         Attorney, Baker, Montana


                        Submitted on Briefs:  April 28, 2004

                                Decided:  August 10, 2004


Filed:

                                  _____
                                       Clerk
Justice James C. Nelson delivered the Opinion of the Court.

¶1 Kay Wiman (Wiman) appeals the judgment of the Sixteenth Judicial District Court, Fallon County, affirming the decision of the Montana Department of Labor and Industry, Board of Labor Appeals (the BOLA).

¶2 We address the following issues on appeal and affirm:

¶3 1. Did the District Court, the BOLA, and the hearing officer err in not resolving the inconsistent positions taken by Fallon County in disciplining Wiman?

¶4 2. Did Wiman adequately preserve her argument regarding exclusion of evidence for her present appeal?

¶5 3. Did the hearing officer correctly determine that the evidence was irrelevant?

¶6 4. Should Fallon County's September 10, 2003 response brief be stricken as being untimely?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 Wiman was employed by Fallon County as a dispatcher. On December 25, 2002, she allowed an unauthorized person into the jail cell of a convicted felon. This person was to provide the felon with a haircut, so this person carried with her several items, including scissors. Fallon County classifies scissors as a weapon, a fact of which Wiman admitted she was aware.

¶8 Wiman did not have permission to allow any person who was not classified as "authorized," into the jail. In allowing this person to enter the jail cell, Wiman violated Fallon County's security policy. This policy stated that the dispatchers were not to allow any person into the jail unless that person was on the authorized list. Fallon County believed

2

that adherence to this security policy would provide for "not only the security of the dispatch operation, but [also] for the protection of those who make it work."

¶9 After investigation of the incident, Wiman was suspended without pay for 60 days for deliberately violating Fallon County's security policy. Wiman sought unemployment insurance benefits during this time, but she was denied them. On March 31, 2003, the Unemployment Insurance Division for the State of Montana found that Wiman was ineligible for such benefits because her actions constituted misconduct.

¶10 On May 1, 2003, a claims adjudicator then revised the Unemployment Insurance Division's earlier decision, stating that due to the delay in investigating the December 25, 2002 haircut incident, the incident did not qualify as misconduct. Fallon County then appealed the May 1, 2003 decision, and a contested case proceeding was held via telephone conference before a hearing officer.

¶11 On June 6, 2003, the hearing officer reversed the claims adjudicator's redetermination and reinstated the Unemployment Insurance Division's initial decision not to provide Wiman with unemployment insurance benefits. Wiman appealed the hearing officer's decision to the BOLA. On July 10, 2003, the BOLA upheld the hearing officer's decision. Wiman again appealed, this time to the Sixteenth Judicial District Court. On September 27, 2003, the District Court upheld the BOLA's decision, finding that it was supported by evidence, as required under § 39-51-2410(5), MCA.

¶12 Wiman now appeals the District Court's decision. Additional facts will be discussed as they become applicable in the following analysis.

3

**STANDARD OF REVIEW**

¶13    We review a Board of Labor Appeals decision to determine if the findings of fact are supported by evidence.  Section 39-51-2410(5), MCA.  "Supported by evidence" is defined as "something more than a scintilla of evidence but may be less than a preponderance of the evidence."  *Potter v. Dept. of Labor and Industry* (1993), 258 Mont. 476, 479, 853 P.2d 1207, 1209 (citations omitted).

**DISCUSSION**

¶14    **1.    Did the District Court, the BOLA, and the hearing officer err in not resolving the inconsistent positions taken by Fallon County in disciplining Wiman?**

¶15    Wiman argues that because Fallon County stated that her suspension arose solely from the December 25, 2002 haircut incident, but later referenced another incident where she had provided items to inmates, such an "inconsistent position" for disciplining her is "suspect on its face" and was "not even acknowledged, let alone resolved as part of the administrative proceedings before . . . [the BOLA]."

¶16    Fallon County notes that Wiman "admitted bringing an unauthorized person into the Fallon County Jail."  As such, Fallon County argues that there was no need for the hearing officer or the BOLA to "look any further into the incident," as Wiman's admission resolved the issue.  Any other asserted conduct would have had no effect on the hearing officer's or the BOLA's determination.

¶17    The BOLA argues that "the record establishes Wiman violated a known and reasonable employer policy," given that she: (1) "does not dispute that Fallon County has

4

a reasonable policy of not allowing unauthorized persons in the jail facility without . . . prior consent;" and (2) "does not dispute knowing that a violation of this policy could result in termination." In addition, the BOLA argues that "[s]ince the employer [Fallon County] met its burden of showing [that] Wiman had been discharged for misconduct, [the] BOLA correctly concluded Wiman was disqualified from receiving UI [unemployment insurance] benefits." We agree.

¶18 Under § 39-51-2303(1), MCA, "[a]n individual must be disqualified for [unemployment insurance] benefits after being discharged: (1) for misconduct connected with the individual's work. . . ." Misconduct includes a "willful or wanton disregard of the rights, title, and interests of a fellow employee or the employer;" or "deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee." Rule 24.11.460(a)-(b), ARM. Under the Administrative Rules of Montana, the following act "signif[ies] a willful and wanton disregard of the rights, title, and interests of the employer or a fellow employee," such as "insubordination showing a deliberate, willful or purposeful refusal to follow the reasonable directions or instructions of the employer." Rule 24.11.461(a), ARM.

¶19 Here, Fallon County had instituted a security policy, whereby the dispatchers at the jail had a list of those persons who were authorized to enter the dispatch center. This policy was instituted not only for the "security of the dispatch operation, but for the protection of those who make it work." Fallon County officials considered any violation of the security policy to be a "serious misconduct violation."

5

¶20 Wiman testified that: (1) she was aware of the security policy; (2) she had signed the security policy; (3) she knew that neither barbers nor beauticians were classified as admitted personnel; (4) she arranged the haircut for the inmate; (5) she knew that scissors were classified as weapons; and (6) she did not supervise the haircut completely.

¶21 Review of the record shows that Fallon County did not take an "inconsistent position" with regard to Wiman's discipline. Rather, the documents in question both reference the December 25, 2002 haircut incident. It was this incident that instigated the suspension, given the fact that Wiman admittedly disregarded the security policy, and had twice before done so. Therefore, we hold that the District Court's, the BOLA's, and the hearing officer's decision was supported by evidence, taking into account both Fallon County's and Wiman's position concerning unemployment insurance benefits.

¶22 **2. Did Wiman adequately preserve her argument regarding exclusion of evidence for her present appeal?**

¶23 Wiman argues that the hearing officer could not weigh evidence concerning other employee's actions in allowing people to bring items into the jail, because the hearing officer "summarily denied its admissibility in the first instance." As such, Wiman argues that "the hearing examiner and the Board of Labor Appeals erred as a matter of law in preventing and excluding certain evidence which was relevant to the issue of misconduct and whether or not Appellant [Wiman] was subjected to disparate treatment at the hands of her employer."

¶24 Fallon County argues that Wiman never presented to the BOLA the evidentiary issues she now raises here. As such, Fallon County argues that Wiman's arguments are waived from consideration by this Court.

¶25 The BOLA argues that evidence targeting "(1) the mental state of the inmate, (2) an incident involving another employee's misconduct, and (3) statements Wiman provided regarding her employer's investigation" were properly excluded given the broad discretion afforded to BOLA.

¶26 Review of the record shows that Wiman did, in fact, raise the evidentiary argument that she advances here. Indeed, Fallon County objected to her attempts to admit into evidence incidents of other employees bringing items to other inmates. These objections were sustained by the hearing officer. While it remains true that the BOLA never addressed Wiman's evidentiary arguments in its decision, the record clearly shows that Wiman adequately preserved her right to appeal those arguments here. Hence, we address her arguments in Issue 3.

¶27 **3.    Did the hearing officer correctly determine that the evidence was irrelevant?**

¶28 Wiman argues that the hearing officer and the BOLA, in effect, "deprived" her the "right to present evidence which goes to the very heart of misconduct as defined in 24.11.460, ARM. . . ." Wiman points out that she "attempted to introduce evidence indicating that the investigation was not complete and that her transcribed statement had

7

portions omitted," but that the hearing officer "refused to allow any evidence relating to same."

¶29    Fallon County argues that "it was not necessary for either the hearings officer or the BOLA to consider evidence not directly related" to Wiman's admitted conduct. Hence, "[o]ther parties' conduct" and "[e]vidence regarding disparate treatment" were not relevant to Wiman's application for benefits. In addition, Fallon County argues that "Wiman has not shown that she was prejudiced," as "[s]he was allowed to present all evidence on the issue of whether her actions amounted to misconduct," during the hearing.

¶30    The BOLA argues that Wiman's objection to the testimony that was not admitted in the District Court regarding the inmate's mental state "would not change Wiman's violation." Assuming the inmate's mental state was relevant and was admitted, the BOLA argues that "admission of such evidence would essentially work against Wiman," as "Wiman would be in a position of arguing she chose to allow an unauthorized person (with a pair of scissors) into an inmate's jail cell--knowing the inmate was unstable and depressed." In addition, the BOLA argues that Wiman's contention regarding admission of statements targeting Fallon County's investigation "must fail," because "Wiman did not provide these statements to the parties or the hearings officer prior to the hearing, and further, she was able to testify during the administrative proceeding and could fully explain the events that led to her discharge."

¶31 The testimony pertinent to our analysis includes the following:

SAVAGE [Wiman's attorney]: Ok. Did you review the investigative report which was sent to you?

WIMAN: Yes, I did.

SAVAGE: Did that include a transcribed statement which you gave the investigator?

WIMAN: Yes.

SAVAGE: Were they complete?

WIMAN: No.

SAVAGE: What portions of your statement that you gave to the investigator were omitted?

BATTERMAN [Fallon County Attorney]: Objection. Irrelevant.

SAVAGE: I'd like to just respond to that. They have, they have in defense of themselves indicated that they needed this extra time to conduct a full investigation. That was part of the reason for the delay. I certainly seem to think that we can question the validity of the investigation and question whether it was a full investigation and a complete investigation as they've represented to the department of labor.

HARPER: Mr. Savage I'm gonna, I'm going to sustain the objection. You're addressing a report that I have not seen.

. . .

SAVAGE: Ok. In document number 44 there is a partial transcript of the interview of Georgia Williams [an inmate] wherein she indicates she was on anti-depressants when she first came in and they stopped filling her prescription. Do you know why [asking Wiman] Fallon County stopped filling her prescription?

BATTERMAN: Objection. Irrelevant.

HARPER [hearing officer]: This is all (inaudible), Mr., excuse me, sustained, Mr. Savage. Hello?

SAVAGE: Yea. I'm just, I'm just going through my questions here. Did you, did you ever complain to anybody from Fallon County about the conditions of the jail or the conditions of Georgia Williams?

WIMAN: Yes. I discussed it on June 1st, November 1st, and November 29th of 2002 with William Duffield. He was a commissioner.

SAVAGE: What was the substance of the conversation that you had with Mr. Duffield?

WIMAN: He said he would look into it. He never got back to me.

SAVAGE: You also indicate in document number 34 that you let other employees know of your concern for Georgia Williams' mental status?

WIMAN: Yes.

SAVAGE: Can you tell me who they were and when you did that and what their response was, just generally?

WIMAN: I made aware all the dispatchers and the law enforcement personnel that stopped in dispatch and they all acted like it wasn't their problem.

SAVAGE: Ok. In document number 45 there's a reference to a birthday cake incident involving Barb [another employee]. Do you see that?

WIMAN: Yes.

SAVAGE: Who's Barb?

WIMAN: Barb Calder. She's a dispatcher, detention officer.

SAVAGE: What was that all about?

BATTERMAN: Objection. Irrelevant.

SAVAGE: I don't think it is. It's part of the record and it's, it's part of how Kay Wiman was treated in relationship to other people.

HARPER: Mr. Savage, I'm going to sustain the objection because I don't believe anybody has ever accused Miss Wiman of providing a birthday cake to the inmate in question, have they?

10

SAVAGE: No. It's, it's a similar incident, where, you know, she's accused as part of the disciplinary proceeding here without pay, that she [Wiman] supplied food stuffs on another occasion to Georgia Williams.

HARPER: No one has said that she [Wiman] provided a birthday cake that I'm aware of. So please go forward.

¶32 Relevant evidence is evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. Generally, all relevant evidence is admissible. Rule 402, M.R.Evid. However, a court may exclude relevant evidence when the probative value of that evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, M.R.Evid.

¶33 Here, Wiman admitted that she allowed an unauthorized person into the jail cell of an inmate. Hence, the fact of consequence before the hearing officer was the denial of unemployment insurance benefits to Wiman during the time she was suspended for allowing an unauthorized person into the jail cell of an inmate. Testimony regarding (1) an inmate's mental state, (2) whether Wiman or another employee provided items to inmates previously, and (3) whether Wiman's breach of Fallon County's security policy was adequately investigated do not tend to make the existence of this fact of consequence more probable or less probable. Therefore, we hold that the hearing officer did not err in determining that the above-quoted testimony was irrelevant.

11

¶34 **4.     Should Fallon County's September 10, 2003 response brief be stricken as being untimely?**

¶35     Wiman argues that "Fallon County's response of September 10, 2003 was in effect 'a second bite at the apple' which violated the District Court's own memorandum and scheduling order of August 11, 2003, allowing . . . Fallon County to have one response to the Petition for Judicial Review. . . ."

¶36     Fallon County argues that, according to the District Court's Scheduling Order, it had "ten (10) business days following Petitioner's [Wiman] filing within which to file its response brief." Wiman filed her Brief in Support of Petition on August 27, 2003, after which Fallon County filed its response brief on September 10, 2003--nine business days later. As such, Fallon County argues that filing of its response brief was timely, "as ordered by the district court."

¶37     The BOLA notes that "[a] district court has broad discretion to determine whether evidence is relevant and admissible. . . ." Given this discretion, the BOLA argues that the District Court did not abuse its discretion in considering Fallon County's response brief because it does not contain any new evidence, and rather contains "merely" an additional argument. Further, the BOLA argues that Wiman "has failed to establish that she has been harmed in anyway" by admission of the brief at issue.

¶38 Here, the District Court's Scheduling Order, issued on August 11, 2003, states:

2. Petitioner shall file her brief in support of Petition, together with specific citation to the pertinent parts of the record, within 10 days following the filing and certification of the administrative record.

3. Respondent Fallon County shall have 10 business days following the Petitioner's filing within which to file its responsive brief.

4. Finally, the Petitioner shall have five 5 business days following Fallon County's filing within which to file its Reply Brief. Whereupon the matter will be deemed submitted.

¶39 The record reflects that Wiman filed her Brief in Support of Petition on August 27, 2003. Fallon County filed its response brief on September 10, 2003, nine business days after Wiman's brief was filed. Hence, Fallon County acted in accordance with the District Court's Scheduling Order. We see no reason why--given Fallon County's obvious adherence to the District Court's Scheduling Order--Fallon County's response brief should be stricken as untimely, and we decline to do so.

¶40 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ JOHN WARNER
/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER