No. DA 06-0053

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 298

MONTANA DEPARTMENT OF CORRECTIONS,

        Petitioner and Respondent,

    v.

STATE OF MONTANA, DEPARTMENT OF
OF LABOR AND INDUSTRY, BOARD OF
LABOR APPEALS and RICHARD F. MORROW,

        Respondents and Appellants.

APPEAL FROM:    The District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. CDV 2005-286,
                Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Maxwell G. Battle, Jr., Battle & Edenfield, PLLC, Kalispell,
                Montana (Morrow)

                Brian J. Hopkins, Special Assistant Attorney General, Helena,
                Montana (Department of Labor and Industry)

        For Respondent:

                Colleen A. White, Special Assistant Attorney General, Helena, Montana

                         Submitted on Briefs:   February 8, 2006

                                  Decided:   November 21, 2006

Filed:

                                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Richard F. Morrow appeals from the decision of the First Judicial District Court, Lewis and Clark County, reversing a Board of Labor Appeals' grant of unemployment insurance benefits. The Montana Department of Labor and Industry joins Morrow in supporting the Board of Labor Appeals' decision. We affirm the District Court.

¶2      We state the issue raised by Morrow and the Department of Labor and Industry as follows:

¶3      Did Morrow's failure to discover and disclose to his employer that he was named as a devisee in a probationer's will constitute misconduct?

**BACKGROUND**

¶4      On October 21, 2004, the Montana Department of Corrections (DOC) terminated its employee, Richard Morrow, from his position as a probation and parole officer. Morrow's termination arose out of his acceptance of an envelope from one of his probationers, Henry Denison, containing a copy of Denison's will. Morrow had supervised Denison for approximately five years. In September of 2003, Denison gave Morrow an envelope marked "open in the event of my death." Morrow put the envelope aside without opening it. About a month later, in October, Denison was discharged from probation. Less than two weeks after his discharge, Denison was killed when he was struck by a vehicle.

¶5      A few days after learning of Denison's death, Morrow opened the envelope and found that the will named Morrow as the personal representative of Denison's estate, as well as a devisee. Morrow accepted the position as personal representative and began the

2

probate process. Since the original will was never found, Denison's mother agreed not to contest the validity of the will if Morrow agreed not to pursue entitlement to family trust funds. As a devisee, Morrow received a house, a pickup truck, some clothing and watches, five to eight acres of land that the house was sitting on, and another undisclosed amount of land which was subject to approximately $1,000 indebtedness.

¶6 A couple days after opening the envelope, Morrow approached his supervisor, Edward Duelfer, in the parking lot while on a break to ask for time off. During the conversation, Morrow told Duelfer he was named in Denison's will. Morrow contends he was completely open and honest during this conversation about being named in the will, and that he was surprised at being named as a devisee. Duelfer later characterized the five to ten minute conversation as a casual comment that did not touch on ethics or inheritances and minimized the significance of the event. The DOC became concerned about ethical violations that may have occurred as a result of Morrow accepting the devise when a citizen complainant brought the matter to its attention. Morrow was suspended for several months pending an investigation and then terminated.

¶7 The termination letter the DOC sent Morrow stated the termination was based on Morrow's failure to follow performance and conduct guidelines and ethical mandates regarding his supervision of Denison and status as devisee of his estate. Specifically, Morrow failed to determine the contents of the envelope or refuse to accept the devise, document the matter, or seek guidance from a supervisor on the matter of receiving valuable property from a person he had recently supervised. The DOC was thus led to believe Morrow either approved of being in the will or even arranged with Denison to be

3

in the will. The letter contained statements of additional conduct that formed the basis of the termination. In two instances, Morrow received verbal warnings for interfering in criminal investigations. In addition, he had been subject to a plan of improvement since October of 2002, which was still in force, for failure to adequately contact clients or complete documentation. The DOC determined this conduct was in violation of the DOC's code of ethics and personnel manual, and thus he was discharged for misconduct.

¶8 Morrow filed for unemployment insurance benefits but was denied because his discharge for misconduct made him ineligible pursuant to § 39-51-2303, MCA. Morrow appealed to the Department of Labor Hearings Bureau. A telephonic hearing was held on February 23, 2005, by a hearing referee. The DOC presented testimony of one witness and Morrow presented testimony of four witnesses. Several documents, including the termination letter, were admitted into the record without objection.

¶9 The DOC bureau chief for human resources, Kenneth McElroy, testified that Morrow's supervision of Denison was substandard. He expressed concerns that Morrow may have overlooked probation violations by Denison. He noted that while Denison may have spent a couple nights in jail, his probation was never revoked. McElroy contended that if Morrow was doing his job, he would have opened the envelope when Denison gave it to him to ascertain the contents.

¶10 Morrow also testified at the hearing. He maintained that, while he assumed the envelope contained a will, he did not know he was a named devisee. Further, he admitted that a number of other things could have been in the envelope. He testified as follows:

4

WHITE [DOC's attorney]: You said the first time you learned you were in the will was after Henry Denison died. Is that correct?

MORROW: Yes, it, it was.

WHITE: Ok. But you admit that he gave you an envelope?

MORROW: Yes.

WHITE: Before he died and it said don't open until after my death?

MORROW: It said do not open, open upon the event of my death.

WHITE: Ok. As a probation officer supervising a, a probationer what is your duty with respect to accepting gifts?

MORROW: My understanding no gifts over $50.

. . . .

WHITE: Could there have been $50 in that envelope?

MORROW: There's a possibility there could have been.

WHITE: Could have been a suicide note?

MORROW: Could have been a suicide note.

WHITE: His wife just died in, in June the month before?

MORROW: No, his wife died four or five months prior.

WHITE: Oh, sorry, I got that wrong but she had just recently died and he was despondent?

MORROW: Yes.

WHITE: Ok. Are you telling us that you didn't stop to consider what could have been in that envelope?

MORROW: I took it on face value what was in that envelope.

WHITE: What was that?

5

MORROW:  That he gave me a copy of his will, sealed and to be opened in the event of his death.

WHITE:  It didn't occur to you that you should have inspected the contents of that envelope.  That you had an obligation as a probation officer to inspect the contents of that envelope?

MORROW:  I felt I had an obligation to honor his request.

WHITE:  Did you have an obligation to record that event in your chronos?

MORROW:  No, I did not have, record that.

WHITE:  You didn't record it?

MORROW: No, I did not.

WHITE:  But was it a significant event?

MORROW:  I guess in retro respect, looking back on it, yes.

WHITE:   A significant [sic] of his conversations about his family will and all the problems associated with that?

MORROW: Possibly.

. . . .

WHITE:  Were you employed by the department of corrections when you discovered that you were an heir in Mr. Denison's estate?

MORROW:  Yes, I was.

Morrow also called three witnesses to testify that his supervision of Denison was proper based on the fact that when Morrow learned Denison was drinking toward the end of his probation, he had him arrested and then sent him to chemical dependency counseling. Morrow himself testified that he had caught Denison drinking twice, just months before he was to be released from probation.  The first time, he recommended chemical

6

dependency treatment, for which Denison was evaluated but never admitted into a program. The second time, Denison spent a couple of nights in jail and then was admitted to treatment.

¶11  Based on testimony and the documents provided to the Hearings Bureau, the hearing referee found that Morrow actively pursued his rights to a portion of Denison's estate, that Morrow had influence over Denison as his probation officer, and that he gained interest in the estate through his position of influence as a state officer. Thus, Morrow accepted a gift of substantial value in violation of § 2-2-104(1)(b), MCA, which, along with the other conduct referenced in the termination letter, amounted to misconduct. According to the referee, Morrow had a duty to reject his interest in the estate. The referee upheld the denial of benefits.

¶12  Morrow appealed to the Board of Labor Appeals (BOLA), which held a hearing on April 7, 2005. Without reviewing the transcript of the February 23 hearing, the BOLA reversed the hearing referee's decision and granted unemployment insurance benefits. It held that while Morrow's conduct in not opening the envelope when he received it was negligent, it did not amount to willful or wanton disregard for his employer's interests.

¶13  The DOC petitioned the First Judicial District Court for judicial review of the BOLA's decision. The District Court reviewed the entire record of the proceedings, including the February 23 hearing transcript, and reversed the BOLA's decision and reinstated the hearing referee's denial of benefits. Morrow appeals the District Court's decision. The BOLA filed a brief in support of its decision.

7

## STANDARD OF REVIEW

¶14 The correct standard of review in this case is set forth at § 39-51-2410, MCA, which provides that when a decision of the BOLA is appealed to the district court or to this Court, "the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law." Supported by the evidence means "something more than a scintilla of evidence but may be less than a preponderance of the evidence." *Wiman v. Dept. of Labor and Industry*, 2004 MT 208, ¶ 13, 322 Mont. 332, ¶ 13, 96 P.3d 710, ¶ 13 (citations omitted). With regard to questions of law, however, we must determine if the BOLA's interpretation is correct. *McKay v. Board of Labor Appeals*, 1999 MT 329, ¶ 13, 297 Mont. 357, ¶ 13, 990 P.2d 1251, ¶ 13 (citations omitted). Whether conduct constitutes misconduct, as defined by the Administrative Rules of Montana, is a question of law which this Court must review for correctness. *Hafner v. Mont. Dept. of Labor*, 280 Mont. 95, 100, 929 P.2d 233, 236 (1996).

## DISCUSSION

¶15 **Did Morrow's failure to discover and disclose to his employer that he was named as a devisee in a probationer's will constitute misconduct?**

¶16 Unemployment insurance benefits are available to individuals who become unemployed and meet certain eligibility requirements. Section 39-51-2103, MCA. An individual is not qualified to receive benefits if he is discharged due to misconduct "connected with the individual's work or affecting the individual's employment . . . ."

Section 39-51-2303, MCA. Misconduct is defined by the Department of Labor and Industry, and includes:

> (a) willful or wanton disregard of the rights, title, and interests of a fellow employee or the employer;
> (b) deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee; [or]
> . . .
> (d) carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

Admin. R. M. 24.11.460(1). The Department of Labor has also specified certain acts that constitute misconduct because they "signify a willful and wanton disregard of the rights, title, and interests of the employer or a fellow employee." Admin. R. M. 24.11.461(1). These specific acts of misconduct include:

> (c) dishonesty related to employment, including but not limited to deliberate falsification or [sic] company records, theft, deliberate deception or lying; [and]
> . . .
> (f) violation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule….

Admin. R. M. 24.11.461(1).

> The question of whether an employee has disregarded standards of behavior, been careless or negligent, or violated company rules is a question of fact. Whether those "facts" then constitute "misconduct" involves interpretation and application of the Administrative Rules of Montana and is a legal conclusion reviewable by this Court.

*Hafner*, 280 Mont. at 100, 929 P.2d at 236.

¶17 In *Hafner*, the employee was terminated for failure to disclose a conflict of interest with a client when he was in charge of the client's account at the same time he was suing the client for discrimination. Hafner was aware of the company's policy and his ethical

9

duties to inform his employer of conflicts of interest. *Hafner*, 280 Mont. at 100-01, 929 P.2d at 237. This Court held that the employer had a legitimate expectation that it would be informed of the conflict, and that Hafner's failure to disclose the conflict "constituted willful disregard of the interests of his employer and of reasonable standards of behavior which the employer had the right to expect of an employee." *Hafner*, 280 Mont. at 102, 929 P.2d at 238 (citing Admin. R. M. 24.11.460(1) and 24.11.461(1)).

¶18 A DOC probation officer is a public employee. Public employees are subject to standards of conduct and a code of ethics. *See* Title 2, Chapter 2, Part 1, MCA. Section 2-2-101, MCA, the statement of purpose section for the code of ethics for public employees, provides in part: "provisions of this part recognize that some actions are conflicts per se between public duty and private interest while other action may or may not pose such conflicts depending upon the surrounding circumstances." Section 2-2-104, MCA, states that it is a breach of public duty for a public employee to:

> (b) accept a gift of substantial value or a substantial economic benefit tantamount to a gift:
> (i) that would tend improperly to influence a reasonable person in the person's position to depart from the faithful and impartial discharge of the person's public duties; or
> (ii) that the person knows or that a reasonable person in that position should know under the circumstances is primarily for the purpose of rewarding the person for official action taken.

Section 2-2-104(1)(b), MCA. In addition, the DOC had its own code of ethics in effect at the time Morrow was its employee. The relevant provisions are:

- I will perform my duties with honesty, integrity, and impartiality, free from personal consideration and without favoritism.
- I will not permit myself to be placed under any kind of personal obligation which could lead to any person to expect official favors.

10

- I will not accept or solicit from anyone, either directly or indirectly, a gift, gratuity or loan, which is designed to influence my official conduct.

The personnel manual for the DOC contains guidelines on what types of gifts an employee should refuse. It adopts the rule found in § 2-2-104, MCA, regarding the acceptance of gifts that would tend to influence or reward official action. The manual notes that such gifts should be closely scrutinized.

¶19 In this case, the hearing referee made findings of fact based on evidence presented at the hearing and concluded that Morrow had breached his public duty by accepting the devise in Denison's will. The referee stated:

> The record shows that the employer discharged the claimant because he had not satisfied the requirements of the plan of improvement initiated in October of 2002, because of the 2 verbal warnings he received in 2002, and because his interaction with Denison and his status in Denison's estate reflected negatively upon the credibility and reputation of the employer.
>
> . . . .
>
> Ethically, he was required to reject any and all interest in the estate from the time he opened Denison's letter.

The referee determined this conduct was a willful disregard of the employer's interests, in violation of a known rule, thus amounting to misconduct.

¶20 The BOLA held a hearing on this issue as well, but did not review the transcript of the hearing below. Instead, it relied on the parties to recall what was on the record. In making its determination, the BOLA did not dispute the hearing referee's findings of fact (although it incorporated them into its decision only for reference), but found there was an error of law. BOLA noted that the referee, in applying the statutory prohibition on gifts to employees, § 2-2-104(1)(b), MCA, failed to factor in the qualifiers contained in

11

subparts (i) and (ii); that is, that the proscribed gift must be for the purpose of improperly influencing the employee or to reward the employee for official action. It concluded that Morrow had no expectation of personal gain in accepting the envelope, and that accepting the devise of a former probationer could not influence him since the probationer was off probation and deceased. The BOLA stated that while Morrow's conduct in not opening the envelope could have been negligent, it did not constitute "willful or wanton" disregard for his employer. Thus, it reversed the hearing referee's decision.

¶21 The DOC appealed the BOLA's decision to the District Court for judicial review pursuant to § 39-51-2410, MCA. Unlike the BOLA, the District Court reviewed the transcript and found that the hearing officer's findings were supported by the evidence. The court reviewed the BOLA's decision and found that it failed to discuss the administrative rules that define misconduct and the code of ethics. It noted that the definition of misconduct in Admin. R. M. 24.11.460 includes negligent conduct, as well as willful or wanton conduct. The court noted that Morrow accepted an envelope that contained Denison's will while Morrow was still supervising Denison. This will contained a gift of more than $50, which he subsequently accepted. Morrow violated a reasonable company rule against accepting such gifts. The court concluded that this infraction constituted "willful and wanton disregard of the rights, title and interests of the employer." Admin. R. M. 24.11.460 and 24.11.461. The District Court reversed the BOLA's decision and Morrow appealed.

¶22 Morrow argues in his appeal that the BOLA was correct in its assessment that a devise from a deceased former probationer could not influence his official actions. He

argues that there is no credible evidence showing he knew or should have known that the envelope contained a will. He honored the confidence of his probationer rather than open the envelope. Although Morrow concedes this was an error, he alleges it was made in good faith. Morrow further contends that the hearing referee's decision was based on inadmissible hearsay evidence, and therefore did not meet the substantial evidence threshold. However, at the hearing before the referee, Morrow did not raise a hearsay objection to the admission of any of the documents or to any of the statements McElroy made when testifying.

¶23 Based on its authority to conduct judicial review, the District Court considered the entire record and found there was evidence to support the hearing referee's decision. While supervising Denison, Morrow received a copy of a will naming him as the devisee of substantial property, clearly a gift of more than $50. This violation of a reasonable company rule that Morrow was aware of, constituted a willful and wanton disregard of the rights, title and interest of his employer, which, pursuant to Admin. R. M. 24.11.461(1), amounts to misconduct.

¶24 Our review of the entire record leads us to conclude there was evidence to support a finding of misconduct. Morrow admits that he should have opened the envelope because it could have contained a suicide note or a cash gift. The BOLA reasoned that this omission may have constituted negligence but did not amount to willful or wanton conduct. However, misconduct includes, "carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest." Admin. R. M. 24.11.460(1)(d). Failure to open an envelope that references "the event of

13

[the probationer's] death" was a negligent act that substantially disregarded the DOC's interest in properly supervising a probationer.

¶25 Morrow then actively pursued his rights as personal representative to Denison's estate as well as his entitlement to his share of the estate. Morrow's acceptance of this substantial devise violated the DOC's rule and Montana law that a public employee is prohibited from accepting gifts meant to influence or reward for official action taken. As Morrow and the BOLA pointed out, Denison was off probation and deceased when Morrow found out about his status as devisee, thus the gift could not be meant to influence. However, this ignores the fact that Denison may have willed the property as a reward for past action Morrow took in his official capacity. For example, regardless of whether Morrow's responses to Denison's drinking were right or wrong, Denison may have perceived them as favors. At the very least, as the DOC personnel manual stated, Morrow, rather than downplaying the significance of his inclusion in the will, should have closely scrutinized the gift and sought guidance from a supervisor.

¶26 We affirm the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE

14