No.  96-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JAMES DEAN MOODY,

Plaintiff and Appellant,

v.

NORTHLAND ROYALTY CO. and
THE DEPARTMENT OF LABOR
& INDUSTRY,

Defendants and Respondents.

APPEAL FROM:   District Court of the Ninth Judicial District,
In and for the County of Glacier,
The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeff R. Lynch, Lynch & Chisholm, Great Falls,
Montana

For Respondent:

Robert J. Emmons, Emmons & Sullivan, Great Falls,
Montana (Northland); Melanie Symons, Department of
Labor & Industry, Helena, Montana

Submitted on Briefs:  October 31, 1996

Decided:  January 3, 1997
Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant James Dean Moody (Moody) appeals the order of the Ninth Judicial District Court, Glacier County, affirming the decision of the Board of Labor Appeals that Moody be denied unemployment benefits because his discharge from employment was a result of his own misconduct.

We reverse.

The sole issue for our review is whether Moody was discharged for misconduct.

FACTS

In November 1994, Moody was employed by Northland Royalty Company (Northland) as a gas plant field operator.  Moody received a monthly salary of $2500.

On November 19, 1994, Moody informed his supervisor at Northland, Bill Sheehan, that one of Northlandþs competitors had offered Moody a job.  Sheehan told Moody that they would discuss the situation on the following Monday, November 21, 1994.

On Monday morning Moody explained to Sheehan that he would remain working for Northland if he were given a $100 per month raise.  Moody stated that he needed a decision from Northland by noon that day.  Moody informed Sheehan that if he left Northland he would take with him Randy Brown, Northlandþs only other field operator.  When Sheehan asked what would happen if Moody did not get a raise, Moody replied that "they would address that when the time came and would live with the decision."

Later Monday morning Sheehan approached Randy Brown, Northlandþs other field operator.  Brown informed Sheehan that he, like Moody, had been offered a job by the competitor.  Sheehan then offered Brown a raise, which Brown accepted.

Next, Sheehan drove to the Four Corners Cafe to make some phone calls.  Sheehan had explained to Moody earlier that he would need to contact Northlandþs Billings office to discuss the situation before giving Moody an answer.  One of the calls Sheehan made was to Steve Jackson, who had recently expressed his interest in working for Northland as a field operator.  Jackson had previously been discharged by the same competitor now offering employment to Moody.  Sheehan offered Jackson Moodyþs field

operator position with Northland, which Jackson accepted.

While at the Four Corners Cafe that morning, Sheehan received a call from Moody, who advised Sheehan that he would not be quitting Northland and that he had already declined the competitorþs offer. Sheehan told Moody that they would discuss the matter when Sheehan got back to the field.

When Sheehan returned to the field shortly after noon, he asked Moody to join him for a ride in his truck. After they had driven only a short distance, Moody asked Sheehan what was going on. Sheehan replied, "Youþre done," and when Moody asked why, Sheehan informed Moody that it was "about money" and that Jackson was "cheaper." Moodyþs employment with Northland was terminated.

Moodyþs starting salary with the competitor would have been $1800 per month. When Moody informed Sheehan about the competitorþs employment offer, he did not disclose the competitorþs salary offer.

On November 21, 1994, Moody filed for unemployment benefits. Initially, the Department of Labor and Industry, Unemployment Insurance Division, determined that Moody was eligible for unemployment benefits. After Northland protested this determination, the Department of Labor and Industry reconsidered Moodyþs eligibility and issued a redetermination letter which stated that Moody was not eligible for unemployment benefits. The benefits examiner concluded that Moody had been the moving party in the employment separation. The examiner further concluded that Moodyþs voluntary separation was without good cause attributable to, or the fault of, Northland, and that therefore Moody was deemed disqualified to receive unemployment benefits.

After the redetermination, the matter proceeded to two separate hearings conducted by the Legal Services Division of the Department of Labor and Industry. At the first hearing, Appeals Referee James L. Keil determined that the benefits examiner had erred in concluding that Moody was the moving party responsible for his separation from employment. Keil concluded that Moody had been discharged from employment.

At the second hearing, on May 9, 1995, the issue before Appeals Referee David Frazier was whether Moody was qualified or disqualified from receiving unemployment insurance benefits. Specifically, Frazier considered whether or not Moody was discharged for "misconduct" as that term is defined and interpreted in the Montana Code Annotated and the Administrative Rules of Montana. Frazier concluded that Moody had been discharged for reasons other than "misconduct," and reversed the benefits examinerþs determination that Moody be disqualified from receiving unemployment benefits.

Northland appealed Referee Frazierþs decision to the Board of Labor Appeals. The Board initially affirmed Frazierþs decision on June 26, 1995, but then issued another statement on September 20,

1995, reversing itself and overturning Frazierþs decision.

On October 18, 1995, Moody submitted a petition for judicial review to the Ninth Judicial District Court, Glacier County, requesting that the court reverse the decision of the Board of Labor Appeals.  The District Court affirmed the Board of Labor Appeals on March 12, 1996.  This appeal followed.

STANDARD OF REVIEW

Recently, in Hafner v. Montana Department of Labor and Industry, No. 96-105 (Mont. Dec. 10, 1996), this Court stated that "the question of whether conduct rises to the level of þmisconductþ is a question of law which this Court reviews for correctness." Hafner, No. 96-105, slip op. at 6.  This standard we enunciated in Hafner required us to reverse two previous cases, Connolly v. Montana Bd. of Labor Appeals (1987), 226  Mont. 201, 734 P.2d 1211 and Stine v. Western Federal Savings Bank (1994), 266 Mont. 83, 879 P.2d 53:

Having reviewed this issue [of whether the determination of "misconduct" is a question of fact or a question of law] in the present case, we reverse Connolly and Stine to the extent that they hold that "misconduct" is a question of fact[.]

Hafner, No. 96-105, slip op. at 6.  We explained that [t]he question of whether an employee has disregarded standards of behavior, been careless or negligent, or violated company rules is a question of fact.  Whether those "facts" then constitute "misconduct" involves interpretation and application of the Administrative Rules of Montana and is a legal conclusion reviewable by this Court.

Hafner, No. 96-105, slip op. at 6-7.  Therefore, we must determine whether the District Courtþs conclusion that Moody was discharged for "misconduct" is correct.

DISCUSSION

Moody concedes that the undisputed facts of this case, stated in Referee Frazierþs written decision and set forth in the Facts section of this Opinion, are supported by substantial evidence. Moody contends, however, that these facts do not constitute "misconduct" as that term is defined and interpreted in the Montana Code Annotated and the Administrative Rules of Montana.  We agree.

Section 39-51-2303, MCA, provides in relevant part:

An individual shall be disqualified for benefits after being discharged:

(1) for misconduct connected with the individualþs work or affecting the individualþs employment ....

Section 39-51-2303(1), MCA.  The Administrative Rules of Montana define "misconduct."  Section 24.11.460, ARM, states, in pertinent part:

DISQUALIFICATION FOR MISCONDUCT
(1) Misconduct as used in  39-51-2303, M.C.A., includes, but is not limited to, the following conduct by a Claimant:

(a) Willful or wanton disregard of the rights, title, and interest of a fellow employee or the employer; . . .

Section 24.11.460(1)(a), ARM.  Section 24.11.461, ARM, identifies a number of specific acts which constitute "misconduct."  Relevant for our purposes here is:

(c) Dishonesty related to employment, including but not limited to, deliberate falsification of company records, theft, deliberate deception or lying; ....

Section 24.11.461(1)(c), ARM.  The Board of Labor Appeals, in its September 21, 1995 decision finding Moody ineligible for unemployment benefits stated:

Testimony and evidence before the Board clearly indicate that the claimant tried to negotiate a raise by giving his employer an ultimatum requiring a raise within several hours and by also threatening to leave taking the only other employee of the company with him.  This conduct was deliberate and was a disregard of the interests of the employer.  That fact is underscored by the evidence that the claimant was making $2,500.00 per month with Northland and had only been offered $1,800.00 per month by the competitor.  It is found that claimantþs actions and statements amounted to deception related to his employment.  It is concluded that such action by the claimant arose [sic] to the level of misconduct according to 39-51-2303 MCA, and ARM 24.11.461.

We do not agree that Moodyþs actions "arose to the level of misconduct according to 39-51-2303 MCA, and ARM 24.11.461."  In the briefs submitted to this Court and in the Boardþs findings, much was made of Moodyþs failure to disclose to Northland that his job offer included a monthly salary $700 dollars less than his existing monthly salary.  Both Northland and the Board characterize this non-disclosure as "dishonesty related to employment."  However, the record reveals that Northland did not

know, prior to terminating Moodyþs employment, that Moody had failed to disclose this salary disparity. Therefore, even if this failure to disclose can be considered a deceptive or dishonest act as contemplated by the definition of "misconduct," it logically could not have been a basis for Moodyþs discharge; Moody could not possibly have been terminated for dishonesty or deception if Northland did not know prior to termination that Moody was or had been dishonest or deceitful.

Both the Board and Northland have characterized Moodyþs statement that he "had to have a decision by noon that day" as an "ultimatum," and his statement that he would "take" Randy Brown with him if he left Northland as a "threat." They argue that the statements constitute misconduct. There is no indication in the record that Moody did not need a decision by noon. The record establishes that Sheehan was operating under the understanding that Moody did need a decision by noon. The appeals referees and the Board did not find, and we cannot locate in the record, any facts showing that Northland believed prior to terminating Moody that his "ultimatum" was untrue. We fail to see the negative connotation given by Northland and the Board to Moodyþs statement that he "had to have a decision by noon that day." This statement did not constitute misconduct.

Similarly, Northland and the Board have characterized Moodyþs statement that he would "take" Randy Brown with him if he left Northland as a "threat." Brown is an adult. There is no evidence that Moody had any control over Brownþs actions. It is unreasonable to believe that Moody could have "taken" Brown with him if Brown himself did not want to leave Northland. Instead, it is reasonable to believe that Brown could have left Northland of his own volition; indeed, he had been offered a job by the competitor, as Sheehan discovered shortly after speaking with Moody. Further, nothing prevented Northland from taking such steps as were necessary to counteract Moodyþs "threat" and secure Brownþs continuing employment, as in fact occurred when Sheehan sought out Brown and gave him a raise. Moodyþs statement that he would "take" Brown with him if he left Northland cannot reasonably be considered a threat to Northlandþs interests, and did not constitute misconduct.

The parties have characterized Moodyþs conduct differently. Our review of the undisputed facts establishes that Moody essentially demanded a raise from his employer, Northland. Moodyþs particular actions and statements in demanding a raise may well have been undertaken in order to exert leverage in the bargaining process. Moody may have been somewhat deceptive. We cannot, however, conclude that upon the particular facts of this case Moodyþs conduct fits within the definition of "misconduct" contemplated by 24.11.460 and 461, ARM, and 39-51-2303, MCA. Moreover, and more importantly with respect to the issue in this

case, we cannot conclude that Northland fired Moody for "misconduct."  When Northland terminated Moodyþs employment, it was largely unaware of conduct which it only later, after Moody was terminated, determined was dishonest or deceptive.  The court erred in affirming the incorrect conclusion of the Board of Labor Appeals that Moody was discharged for misconduct.

Reversed.


/S/  WILLIAM E. HUNT, SR.




We Concur:


/S/  J. A.  TURNAGE
/S/  CHARLES E. ERDMANN
/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART