DA 11-0751

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 207

SOMONT OIL COMPANY, INC.,

        Petitioner and Appellant,

   v.

DOREEN KING, and STATE OF MONTANA,
DEPARTMENT OF LABOR AND INDUSTRY,

        Respondents and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Ninth Judicial District,<br>In and For the County of Toole, Cause No. DV 10-094<br>Honorable Laurie McKinnon, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            James A. Donahue, Gregory J. Hatley; Davis, Hatley, Haffeman & Tighe,
            P.C.; Great Falls, Montana

            Brian D. Lee; Lee Law Office, P.C.; Shelby, Montana

        For Appellees:

            Linda Deola; Morrison, Motl & Sherwood, PLLP; Helena, Montana
            (Doreen King)

            Patricia Bik, Attorney for the State of Montana; Helena, Montana
            (Department of Labor & Industry)

                    Submitted on Briefs:  July 25, 2012

                            Decided:  September 18, 2012

Filed:

_____
                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Appellant Somont Oil Company, Inc. ("Somont") appeals the Ninth Judicial District Court's decision affirming the Board of Labor Appeals' ("BOLA" or "the Board") award of unemployment benefits to Doreen L. King. The only issue on appeal is whether the Board correctly concluded that Somont failed to show misconduct, as defined in Admin. R. Mont. 24.11.460 and 24.11.461. We affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

¶2      Somont operates an oil and natural gas production office near Shelby, Montana. On July 28, 2008, the company hired King as an office manager. In the summer of 2009, Somont sought to hire an operations manager, who would replace the current vice president of operations, Curt Dahlgaard, when he retired. Joseph Alborano applied for the position. King facilitated a background check on Alborano, which revealed some negative credit history, but no criminal record. After discussing the background report with Alborano and contacting his references, Somont's president, Charles Jansky, chose Alborano for the position. Jansky introduced Alborano to Somont's employees, then met with the company's managers to gather their impressions. King expressed concerns based on Alborano's credit history and rumors that he had a violent background and family issues. Asked for examples, she provided none, although the hearing officer found that Alborano had a twenty-two-year-old restraining order that had not yet been removed.

2

¶3	When Dahlgaard took planned vacation in late August 2009, Jansky was inclined to place Alborano temporarily in charge and held another meeting with the managers for input on his decision. King expressed concern about Alborano's tendency to talk about his financial situation. Jansky found this complaint unrelated to Alborano's ability to perform his duties and placed Alborano temporarily in charge of operations.

¶4	On November 23, 2009, King received a performance evaluation which indicated that she met and exceeded Somont's expectations and that Somont was giving her a pay raise. About two months later, in January 2010, King raised additional concerns about Alborano to fellow employees and company officials, which resulted in Somont's eventual decision to terminate her employment.

¶5	On January 22, 2010, King told Somont's receptionist, Lorrie Housel, that Alborano "had a violent felony history resulting in a restraining order, threw temper tantrums, got red in the face, chewed his hands, ate earwax, threatened to snap her like a twig, and was abusive to his family." At first, Housel believed King and agreed that Alborano exhibited threatening conduct. She told King that Alborano had hurt her by shaking her hand too hard and by pressing on her shoulder when she had a migraine. King solicited Housel's support when she drafted a letter that she intended to read to Alborano, stating that she and Housel did not want to be subjected to his derogatory and intimidating behavior. King also called Dahlgaard to inform him of the letter and to tell him that she and Housel feared for their safety due to Alborano's behavior. Dahlgaard

3

immediately contacted Somont's attorney, Don Lee, who met with King and Housel on January 25, 2010. Lee then called Jansky and suggested that he perform an investigation.

¶6 On January 26, 2010, Jansky and Somont's human resource manager, Christine Taveira, flew from Texas to Montana to investigate the allegations regarding Alborano. Jansky, Taveira and Lee interviewed King and Housel, this time separately. Evidence was presented that, during the meeting with Housel, King sent Housel a series of text messages asking her to leave the meeting, but that Housel ignored the messages. During the interview, Housel withdrew her complaints and stated that she did not actually feel threatened by Alborano. Jansky and Taveira then interviewed Alborano, who denied King's statements and explained that the alleged threat of snapping King like a twig was a joke made with reference to a movie. Jansky and Taveira believed Alborano and, on January 27, 2010, Jansky discharged King. He stated that Somont had concluded that her allegations were not supported by substantial credible evidence and many of them were patently false, resulting in Somont's inability to have faith in her judgment and credibility.

¶7 King applied to the Department of Labor and Industry Unemployment Insurance Division ("UID") for unemployment benefits. On June 7, 2010, an UID claims adjudicator determined that King had not been discharged for misconduct because intentional disregard of her obligation to Somont had not been established. Somont requested re-determination and, on July 14, 2010, a second UID adjudicator concluded that there was no evidence to justify changing the decision. Somont appealed to the

4

Department of Labor and Industry Hearings Bureau. On August 10, 2010, following an evidentiary hearing in which King appeared telephonically without counsel, the hearing officer reversed, finding that King's statements were "not an error in judgment."

¶8 King appealed to BOLA. The Board held a hearing on October 6, 2010, at which King and Somont were present and represented by counsel. On October 15, 2010, the Board reversed the hearing officer's decision, concluding that King's conduct "at best was a good faith error in judgment." The Board's written decision discussed King's positive employment history and stated that Somont had presented insufficient evidence to meet its burden in proving "'willful or wanton' or deliberate disregard for the interests of the employer, or carelessness or negligence of such degree to show an intentional/substantial disregard for the employer's interest" under Admin. R. M. 24.11.460(1).

¶9 The District Court dismissed Somont's petition for review. The court indicated that Somont's argument on appeal would require an impermissible re-weighing of the evidence. "While there may very well be evidence to support Somont's decision to terminate," the court found substantial evidence to support BOLA's determination that Somont had not shown misconduct.

**STANDARD OF REVIEW**

¶10 Whether an employee has "disregarded standards of behavior, been careless or negligent, or violated company rules" are factual questions, which we review for substantial evidence. *Hafner v. Mont. Dep't of Labor*, 280 Mont. 95, 99-100, 929 P.2d

5

233, 236 (1996) (citing § 39-51-2410(5), MCA). If supported by substantial evidence, BOLA's findings of fact are conclusive, even if a preponderance of the evidence weighs to the contrary. *Johnson v. W. Transport, LLC*, 2011 MT 13, ¶ 17, 359 Mont. 145, 247 P.3d 1094 (internal citations omitted).

¶11 Whether those facts demonstrate "misconduct" requires "interpretation and application of the Administrative Rules of Montana and is a legal conclusion reviewable by this Court." *Hafner*, 280 Mont. at 100, 929 P.3d at 236. We review an agency's conclusion of law to determine if the agency's interpretation of the law is correct. *Steer, Inc. v. Dep't of Revenue*, 245 Mont. 470, 474, 803 P.2d 601, 603 (1990).

## DISCUSSION

¶12 In a judicial proceeding to review BOLA's determination of a claim for unemployment benefits, "the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and jurisdiction of [the] court shall be confined to questions of law." Section 39-51-2410(5), MCA. According to Somont, BOLA did not make any of its own factual findings when it reversed the hearing officer's decision, "nor did it state that the hearing officer's findings of fact were insufficient, inaccurate, or not supported by the record." Somont contends that BOLA thus adopted the hearing officer's factual findings, and incorrectly reversed her conclusion that misconduct was shown. King argues that Somont simply asks the Court to re-weigh the evidence.

6

¶13　In deciding whether BOLA's legal conclusions are correct, we review the record of all prior proceedings. *See Mont. Dep't of Corrections v. State Dep't of Labor & Industry*, 2006 MT 298, ¶ 24, 334 Mont. 425, 148 P.3d 619 (providing that judicial review of a BOLA decision involves consideration of the "entire record"). Having reviewed the record, we disagree with Somont's contention. The Board's written decision states that "the hearing officer's findings are in error," and the transcript of its hearing on the matter indicates that the Board found insufficient proof that King intended to deceive her employer or substantially disregarded Somont's interests.

¶14　The administrative rule applicable in this case, which since has been repealed, defined "misconduct" for purposes of eligibility for unemployment benefits under § 39-51-2303, MCA. Admin. R. M. 24.11.460 (repealed 2012 MAR p. 1040 (5/25/12)). The rule provided a list of findings, any one of which would constitute misconduct, then provided a list of findings that, standing alone, would fail to demonstrate misconduct. It stated in full as follows:

> 24.11.460　DISQUALIFICATION FOR MISCONDUCT
>
> (1) Misconduct as used in 39-51-2303, MCA, includes, but is not limited to, the following conduct by a claimant:
>
> (a) willful or wanton disregard of the rights, title, and interests of a fellow employee or the employer;
>
> (b) deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;
>
> (c) carelessness or negligence that causes or would likely cause serious bodily harm to the employer or fellow employee; or

7

(d) carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

(2) The term misconduct does not necessarily include:

(a) inefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity;

(b) inadvertence or ordinary negligence in isolated instances; or

(c) good faith errors in judgment or discretion.

Additionally, Admin. R. M. 24.11.461 enumerates specific acts that constitute misconduct because they "signify a willful and wanton disregard for the rights, title, and interests of the employer or a fellow employee."

¶15    In its August 10, 2010 decision, the hearing officer determined that Somont had shown King's behavior to be intentional under Admin. R. M. 24.11.460(1)(a)-(b), rather than an error in judgment, and thus concluded that Somont had proven misconduct. This determination was supported by the hearing officer's finding that King intended to have Alborano fired. The hearing officer stated specifically:

> King argues that she never intended to have Alborano fired but just wanted some type of resolution. It is inconceivable the employer would consider continuing Alborano's employment if it found any of the accusations of threatening and bizarre behavior to be true. King's actions were not an error in judgment. The claimant's accusations, if found to be true, would have resulted in the immediate termination of Alborano.

¶16    When BOLA reversed that decision in its written opinion, it determined that these findings were in error and provided reasons, albeit limited ones, for disagreeing with the hearing officer:

8

In this case, the Board majority finds that there is insufficient evidence that King's actions were 'willful or wanton' or [in] deliberate disregard for the interests of the employer, or carelessness or negligence of such degree to show an intentional/substantial disregard of the employer's interest. The Board majority finds that King was a long-time employee with little to no history of poor performance and her actions in this matter at best w[ere] a good faith error in judgment. Therefore, the Board majority finds that the employer failed to meet its burden and establish with substantial, credible evidence that King's discharge was for misconduct.

The transcript of the BOLA hearing includes questioning by members of the Board and discussion by counsel for both parties as to each of the relevant criteria under Admin. R. M. 24.11.460 and Admin. R. M. 24.11.461. At that time, Somont argued that King's conduct was willful, wanton and in substantial disregard of Somont's interests and expected standards of conduct, thus constituting misconduct under Admin R. M. 24.11.460(1)(a), (b), or (d) and Admin. R. M. 24.11.461. King argued that her conduct was at most isolated negligence or a good faith error in judgment under Admin. R. M. 24.11.460(2)(b) or (c), and therefore did not rise to misconduct. The Board considered these arguments and concluded that Somont had failed to prove King's conduct was willful, wanton, or in substantial disregard of Somont's interests.

¶17 While the Board's written opinion only referred to King's positive employment history, the hearing transcript reveals that the BOLA majority was not convinced that King was being deceitful when she claimed that Alborano's comments had affected her:

BOLAND: I've reviewed as, as [have] my colleagues[,] the record and listened to testimony. I don't, I guess I don't see where misconduct is part of this. I think it's interesting that Mr. Alborano's comments are dismissed as a joke or a – I can see how that would affect Miss King. I would make a motion to reverse the hearing officer's decision.

9

CALHOUN: I'm going to second that based primarily on my evaluation of what happened just before she was terminated. Namely the, the performance review that she got which was, was good. I, I think if anything was amiss it was her, her negligence, at most. So I second the motion.

The discussion helps to clarify the Board's basis for reversing the hearing officer's factual findings; namely, in light of conflicting evidence as to King's intent, Somont had not met its burden in proving misconduct as defined by Admin. R. M. 24.11.460 and Admin. R. M. 24.11.461.

¶18     We apply a deferential standard of review to an agency's interpretation in matters of its expertise. *See Gypsy Highview Gathering Sys., Inc. v. Stokes*, 221 Mont. 11, 16, 716 P.2d 620, 623 (1986) (deferring to BOLA's conclusion as to unsafe working conditions because "[t]he Board, with its expertise in the area, is in the better position to determine what is and is not safe"). In determining eligibility for unemployment benefits, BOLA has considerable expertise in deciding what constitutes "willful or wanton disregard of the rights, title and interests of a fellow employee or employer" and "carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard for the employer's interest." Admin. R. M. 24.11.460(1)(a)-(b). Here, the Board reasonably concluded that these findings, as made by the hearing officer, were not supported by the evidence.

¶19     When reviewing a final agency decision, we have often stated that substantial evidence requires "more than a scintilla of evidence, but less than a preponderance of the evidence." *See e.g. Johnson*, ¶ 17 (citing *American Agrijusters Co. v. Mont. Dep't of*

10

*Labor and Indus.*, 1999 MT 241, ¶ 15, 296 Mont. 176, 988 P.2d 782). Applying this standard, we have reversed BOLA's findings of fact when they were plainly not supported by the record or where the Board failed to review the record in making its decision. *See e.g. Moody v. Northland Royalty Co.*, 281 Mont. 26, 31, 930 P.2d 1100, 1103 (1997) (reversing BOLA's decision where BOLA found that the employee made a false statement, but there was "no indication in the record" that the statement was false); *Mont. Dep't of Corrections*, ¶¶ 19-21 (reversing BOLA's decision where BOLA reversed the hearing officer without reviewing the record to determine whether there was substantial evidence to support a finding of willful disregard of the employer's interest). Here, BOLA's decision was based on its review of the record, as well as its independent questioning of counsel for both parties during the hearing, and it provided reasons for reversing the hearing officer's findings.

¶20 Somont contends that King willfully disregarded Somont's interests by "sharing her misinformation with Housel," when she could instead have "quietly notified Somont of her concerns, [so that] an investigation could have quickly been launched without the drama and chaos that resulted . . . ." While King may have used poor judgment, BOLA's determination is appropriate when compared to cases where an employee was held to have acted with willful or wanton disregard of the employer's interests. *See Hafner*, 280 Mont. at 100-101, 929 P.2d at 237 (employee violated the "ethical rules of a Right-of-Way agent" and a company policy of which he was aware); *see also Mont. Dep't of Corrections*, ¶ 23 (employee violated a rule written in the personnel manual which was a

11

"reasonable company rule that [he] was aware of"); *see also Fed. Aviation Administration v. Mont. State Dep't of Labor & Indus.*, 212 Mont. 1, 7, 685 P.2d 365, 368 (1984) (employees violated federal law by participating in a strike). Somont did not prove that King's conduct violated an ethical rule, an explicit direction or policy of the company, or the law.

¶21 Judicial review of BOLA's decision should not involve reconsideration of the evidence, as the District Court aptly noted in this case. *Johnson*, ¶ 18 ("The reviewing court must decide whether substantial evidence supports the [Board]'s findings and not whether, on the same evidence, it would have arrived at the same conclusion."); *Gypsy Highway*, 221 Mont. at 15, 716 P.2d at 623 ("[I]t is not our job to weigh conflicting evidence presented to the Board."). Here, BOLA determined that the hearing officer's finding of intentional conduct lacked substantial evidence. It found that King's behavior amounted to isolated negligence, at most, rather than deliberate deception. The Board cited evidence in its written opinion and during its hearing to support this determination.

¶22 The facts reasonably may be interpreted to support BOLA's legal conclusion. While Somont may have had good reason to determine that King's unsatisfactory conduct justified termination, evidence supports the Board's decision that King's dislike of Alborano and her sharing of misinformation within the workplace did not amount to substantial disregard of Somont's interests or deliberate refusal to follow company directives. Like the District Court, we need not determine whether this Court would reach the same conclusion on the evidence presented. *Johnson*, ¶ 18. Because BOLA's

12

factual findings were supported by substantial evidence, its legal conclusion that misconduct had not been shown under Admin. R. M. 24.11.460 and Admin R. M. 24.11.461 was correct. *Hafner*, 280 Mont. at 100, 929 P.2d at 236.

¶23 Accordingly, the judgment of the District Court is affirmed.


/S/ BETH BAKER


We concur:


/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE

13