Justice Laurie McKinnon delivered the Opinion of the Court.
***303 ¶1 Exxon Mobil Corporation (ExxonMobil) appeals an order from the First Judicial District Court, Lewis and Clark County, denying ExxonMobil's petition for interlocutory adjudication and affirming the Department of Revenue's (Department) determination that ExxonMobil is entitled to an 80% exclusion from income for the dividends it received from several of its domestic subsidiaries. We reverse.
¶2 ExxonMobil presents three issues for review, but we conclude the following issue is dispositive:
Did the District Court err when it held the dividends at issue were expressly apportionable as income under § 15-31-325, MCA, and therefore, ExxonMobil was not entitled to a 100% income exclusion for the dividends under Internal Revenue Code § 243 ?
¶3 The Department also filed a motion to strike certain portions of ExxonMobil's Reply Brief, which we took under advisement pending our full consideration of this appeal. Because we do not rely on the portions of ExxonMobil's Reply Brief that the Department takes issue with in this Opinion, we do not reach the merits of the Department's motion to strike.
FACTUAL AND PROCEDURAL BACKGROUND
¶4 The material facts in this case are undisputed. In Montana, multinational corporations like ExxonMobil may elect to file their tax returns by apportioning their income attributable to Montana from their domestic subsidiaries while excluding certain activities from their foreign subsidiaries. The Legislature codified this election-known as a water's-edge election -in §§ 15-31-321 to -326, MCA, in 1987. 1987 Mont. Laws 1689 (Ch. 616). A multinational corporation filing under the water's-edge election files a combined return for its affiliated corporations and itself, which the provisions collectively define as the water's-edge combined group . Sections 15-31-321(3), -322, MCA.
¶5 Between 2008 and 2010, the tax years at issue, ExxonMobil engaged in a unitary business in Montana. In 2008, ExxonMobil made a water's-edge election effective for tax years 2008-2010, which ***304 allowed it to exclude foreign subsidiaries from its water's-edge combined group return. During that time, ExxonMobil owned several domestic subsidiaries (that is, other corporations incorporated in the United States) that had 20% or less of their payroll and property located inside the United States. These entities are commonly known as 80/20 corporations . Pursuant to applicable Montana law, ExxonMobil excluded both its foreign subsidiaries and its 80/20 corporations from its water's-edge combined group return. These 80/20 corporations earned income and paid dividends to ExxonMobil's *409 water's-edge combined group members.
¶6 On ExxonMobil's 2008-2010 water's-edge combined group returns, it claimed an 80% income exclusion for its 80/20 corporations' after-tax net income under § 15-31-325(2), MCA, but it also claimed a 100% income exclusion for the dividends it actually received by applying a federal deduction for the dividends- Internal Revenue Code (I.R.C.) § 243 -to its Montana taxes. The Department audited ExxonMobil's 2008-2010 water's-edge combined group returns and determined it was only entitled to an 80% exclusion for dividends it actually received from its 80/20 corporations, the same exclusion ExxonMobil received for the 80/20 corporations' after-tax net income. Therefore, the Department found ExxonMobil needed to apportion and pay taxes on 20% of the dividends it actually received from its 80/20 corporations. The parties do not dispute that ExxonMobil should have paid taxes on the remaining 20% of its 80/20 corporations' after-tax net income; however, ExxonMobil argues it should not have to also pay taxes on 20% of the dividends it actually received from its 80/20 corporations. As a result of the audit for those years, the Department assessed ExxonMobil an additional tax of over $4 million.
¶7 ExxonMobil challenged the Department's adjustment after its audit by filing timely appeals with the Department's Office of Dispute Resolution and later the Montana Tax Appeal Board. The parties were unable to reach an agreement on the issue of whether the Department properly denied ExxonMobil's claimed 100% exclusion for dividends received from its 80/20 corporations. As the issue presented a pure legal question of statutory interpretation, ExxonMobil filed a petition for interlocutory adjudication with the District Court. The District Court entered judgment in favor of the Department. ExxonMobil appeals.
STANDARD OF REVIEW
¶8 This case solely presents a legal question of statutory ***305 construction.[1] When reviewing an agency's or a district court's conclusion of law, we review the conclusion of law to determine whether it is correct. Bitterroot River Protective Ass'n , ¶ 18 ; Steer, Inc. , 245 Mont. at 474-75, 803 P.2d at 603.
DISCUSSION
¶9 ExxonMobil contends the Department erred by including the actual dividends ExxonMobil received from its 80/20 corporations in its apportionable taxable income. As the parties argue over highly technical provisions in Montana's corporate tax scheme, some background information is helpful to understand the parties' positions.
¶10 Montana imposes an income tax on corporations and similar entities. Section 15-31-101, MCA ; see generally Title 15, chapter 31, MCA. A corporation's income tax is based on its total net income for the taxable period. A corporation computes its net income by first determining its gross income according to the I.R.C. The corporation then adjusts that figure according to specifically enumerated items under § 15-31-113(1), MCA, and applies any pertinent Montana-specific deductions under § 15-31-114, MCA, to reach its net income for Montana tax purposes.
¶11 When corporations like ExxonMobil conduct business outside of Montana, the Legislature may only tax income earned within Montana's boundaries-income attributable to Montana. See *410 Moorman Mfg. Co. v. Bair , 437 U.S. 267, 272-273, 98 S. Ct. 2340, 2344, 57 L.Ed.2d 197 (1978). Any corporation with business activities that are taxable both inside and outside the state must allocate and apportion its net income to Montana to determine its income subject to state taxation. Section 15-31-301(1), MCA. The rule applies to any corporation engaged in a multistate or multinational unitary business encompassing Montana; that is, when "the operation of the business within the state is ***306 dependent upon or contributory to the operation of the business outside the state or if the units of the business within and without the state are closely allied and not capable of separate maintenance as independent businesses." Section 15-31-301(2), MCA. To determine the percentage of apportionable income or loss to Montana sources, corporations calculate the average of three figures: their respective percentages of property, payroll, and sales located in or attributable to Montana. Section 15-1-601 art. IV(9), MCA ; see §§ 15-31-305 to -311, MCA.
¶12 A corporation like ExxonMobil carrying on a unitary business must file a combined report based on the income of its unitary business group . The unitary business group comprises the corporation, all unitary affiliates in which the corporation owns more than a 50% interest, and all unitary affiliates owning more than a 50% interest in the corporation. Admin. R. M. 42.26.204. The combined report for unitary business groups is the default method for multistate and multinational corporations to determine their tax liability to Montana. See §§ 15-31-301, -305, MCA.
¶13 Notwithstanding, a multinational corporation may make a water's-edge election, which generally allows it to exclude, for Montana tax purposes, its foreign operations' income or loss from its apportionable income. Section 15-31-322, MCA. The water's-edge election allows a multinational corporation to simplify its reporting requirements and, in many cases, reduces its overall tax burden by allowing the corporation to exclude its foreign subsidiaries' income that it may have already paid foreign taxes on. A multinational corporation making a water's-edge election files taxes on behalf of its water's-edge combined group-all the affiliated corporations § 15-31-322, MCA, requires a return under a water's-edge election to include. For example, most domestic corporations a multinational corporation owns will be a part of its water's-edge combined group, other than its 80/20 corporations that have less than 20% of their payroll and property assignable to locations within the United States. Section 15-31-322(1)(a), MCA. The multinational corporation apportions income, files a return, and pays taxes for those domestic corporations and all other water's-edge combined group members. Section 15-31-322(1), MCA.
¶14 Although a multinational corporation may exclude most of its foreign subsidiaries from the water's-edge combined group (and therefore, may exclude the foreign subsidiaries' income from the group's Montana taxes), the water's-edge combined group may still have to pay taxes on certain activities, such as its receipt of dividends ***307 from its foreign subsidiaries. A dividend is a "portion of a company's earnings or profits distributed pro rata to its shareholders, usually in the form of cash or additional shares." Dividend , Black's Law Dictionary (10th ed. 2014); see I.R.C. § 316(a)(2) ("[T]he term 'dividend' means any distribution of property made by a corporation to its shareholders ... out of its earnings and profits of the taxable year ... without regard to the amount of the earnings and profits at the time the distribution was made."). A corporation may or may not issue dividends with the income it earns; some corporations may have income but choose not to issue dividends. Therefore, while net income is a broad concept encompassing a corporation's profits generally, a dividend is only a portion of that net income the corporation issues to a shareholder.
¶15 Montana's water's-edge provisions treat net income earned by a corporation's subsidiary and the dividends the corporation actually receives from the subsidiary differently. In the case of a domestic subsidiary with more than 20% of its property and payroll assignable to United States locations, a multinational corporation must include the domestic subsidiary in its water's-edge combined group and pay taxes on the domestic subsidiary's income; however, when the multinational corporation receives dividends *411 from the domestic subsidiary, those dividends are not considered apportionable income-they are 100% excludable. Sections 15-31-322(1)(a), -325(7), MCA. Barring few exceptions, in the case of a foreign subsidiary, a multinational corporation must not include the foreign subsidiary in the water's-edge combined group; however, when the multinational corporation receives dividends from the foreign subsidiary, those dividends are considered apportionable income and are 80% excludable from income.[2] Sections 15-31-322(1), -325(1), (4), MCA. Finally, while a multinational corporation that owns an 80/20 corporation does not include the 80/20 corporation in its water's-edge combined group, it must treat the 80/20 corporation's after-tax net income as dividends received from a foreign corporation. Sections 15-31-322(1), -325(2), MCA. Accordingly, the 80/20 corporation's after-tax net income is 80% excludable from the water's-edge combined group's apportionable income. Section 15-31-325(2), MCA. ***308 ¶16 However, ExxonMobil and the Department dispute whether the water's-edge provisions address actual dividends a multinational corporation receives from its 80/20 corporations, and if so, which percentage of those dividends are excludable (80% or 100%). The parties do not dispute that ExxonMobil can exclude 80% of the after-tax net income of its 80/20 corporations from its apportionable income through § 15-31-325(2), (4), MCA. Rather, they dispute how ExxonMobil should treat the actual dividends it receives from its 80/20 corporations.
¶17 Did the District Court err when it held the dividends at issue were expressly apportionable as income under § 15-31-325, MCA, and therefore, ExxonMobil was not entitled to a 100% income exclusion for the dividends under Internal Revenue Code § 243 ?
¶18 In Baker Bancorporation v. Dep't of Revenue , 202 Mont. 94, 98, 657 P.2d 89, 91 (1982), we reaffirmed several older cases that stated corporations are entitled to all I.R.C. deductions when filing their state taxes unless the Montana Legislature expressly provides otherwise. The Department denied six holding companies' deduction claims for dividends they received from their subsidiary corporations under I.R.C. § 243. The holding companies appealed the Department's denial. I.R.C. § 243 allowed (and still allows) corporations to deduct 100% of the dividends they receive from subsidiaries in which they owned 80% or more of the voting stock. See I.R.C. §§ 243, 1504(a) ; Baker Bancorporation , 202 Mont. at 99, 657 P.2d at 92. We stated, "[T]his Court has consistently held that the definition of gross income and net income for state corporation license tax purposes is dependent upon and incorporates by reference the provisions of the [I.R.C.] except as expressly provided otherwise, as in the case of the exempt interest exclusion and the dividend deduction." Baker Bancorporation , 202 Mont. at 98, 657 P.2d at 91 (quoting Lazy JD Cattle Co. v. State Bd. of Equalization , 161 Mont. 40, 45, 504 P.2d 287, 290 (1972) ). Thus, we concluded that because no provision of Montana's corporate tax scheme expressly proscribed I.R.C. § 243 deductions, the appellant companies were entitled to the federal deductions when filing their Montana taxes. Baker Bancorporation , 202 Mont. at 98-99, 657 P.2d at 92. Baker Bancorporation continues to apply today: unless the Legislature expressly provides otherwise, a corporation is entitled to the federal dividend deduction under I.R.C. § 243.
¶19 The Department argues § 15-31-325, MCA, expressly provides otherwise-that corporations filing under the water's-edge election are not entitled to the federal dividend deduction under I.R.C. § 243. ExxonMobil contends § 15-31-325(5), MCA, expressly allows for ***309 a 100% income exclusion for actual dividends received from 80/20 corporations. In the alternative, ExxonMobil maintains § 15-31-325, MCA, neither addresses the dividends at issue nor I.R.C. § 243. Therefore, ExxonMobil continues, *412 even if it is not entitled to a 100% exclusion under § 15-31-325(5), MCA, it is entitled to a 100% deduction under I.R.C. § 243 for its Montana taxes. After reviewing the plain language of the statute, we conclude § 15-31-325, MCA, addresses neither I.R.C. § 243 nor actual dividends received from 80/20 corporations.
¶20 We begin with some foundational standards of statutory construction:
In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.
Section 1-2-101, MCA. Further, when construing a statute, we pursue the intention of the Legislature if possible. "When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it." Section 1-2-102, MCA. We also presume the Legislature is aware of existing law when it enacts or revises statutes, including our decisions interpreting individual statutes. Musselshell Ranch Co. v. Seidel-Joukova , 2011 MT 217, ¶ 14, 362 Mont. 1, 261 P.3d 570 (quoting Swanson v. Hartford Ins. Co. , 2002 MT 81, ¶ 22, 309 Mont. 269, 46 P.3d 584 ). Where a statute imposing a tax is susceptible to two constructions and legislative intent is in doubt, we resolve the doubt in favor of the taxpayer; on the other hand, where a statute granting an exemption or deduction is susceptible to two constructions and legislative intent is in doubt, we resolve the doubt in favor of the taxing power. Compare W. Energy Co. v. Dep't of Revenue , 1999 MT 289, ¶ 10, 297 Mont. 55, 990 P.2d 767, with State ex rel. Anderson v. State Bd. of Equalization , 133 Mont. 8, 13, 319 P.2d 221, 224 (1957). But in either case, where the statute's plain language is clear, we will simply "ascertain and declare what is in terms or in substance contained therein." Section 1-2-101, MCA.
¶21 In full, § 15-31-325, MCA, provides:
For purposes of [§§] 15-31-321 through 15-31-326, [MCA,] dividends must be treated as follows:
(1) Dividends received from corporations incorporated outside the United States, to the extent taxable, are considered income ***310 subject to apportionment.
(2) The after-tax net income of United States corporations excluded from eligibility as affiliated corporations under [§] 15-31-322(1)[, MCA,] and possession corporations described in [ I.R.C. §§ 931 to 934, 936 ] are considered dividends received from corporations incorporated outside the United States.
(3) Amounts included in income under [ I.R.C. §§ 951 to 962, 964 ] are considered dividends from corporations incorporated outside the United States.
(4) Eighty percent of all dividends apportionable under this section must be excluded from income subject to apportionment.
(5) "Deemed" distributions, as set forth in [ I.R.C. § 78 ], and corresponding amounts with respect to dividends considered received under subsection (2) of this section must be excluded from the income of the water's-edge combined group.
(6) The dividends apportionable under this section are in lieu of any expenses attributable to dividend income.
(7) A dividend from a corporation required to be combined in the water's-edge combined group must be eliminated from the calculation of apportionable income.
¶22 Foremost, nothing in the statute expressly prevents multinational corporations from utilizing I.R.C. § 243 deductions. Nevertheless, if the statute provides an alternative method for categorizing and including (or excluding) actual dividends from 80/20 corporations in a water's-edge combined group's income, then, presumably, the Legislature has expressly proscribed I.R.C. § 243 deductions for the dividends at issue.
¶23 We address each subsection in turn. Subsection (1) refers only to corporations "incorporated outside the United States," whereas 80/20 corporations are domestic. Subsection (3) similarly only refers to foreign *413 corporations: I.R.C. §§ 951 to 962, and 964, only regulate foreign corporations. Subsection (6) is explanatory and allows a water's-edge combined group to apportion dividends in lieu of expenses attributable to dividend income. Subsection (7) exempts dividends received only from members of the water's-edge combined group, and not 80/20 corporations. Subsection (4) excludes 80% of dividends apportionable under § 15-31-325, MCA, but does not apportion dividends itself or address dividends not covered by other subsections. This leaves only Subsections (2) and (5).
¶24 Subsection (2) clearly refers to the after-tax net income of domestic corporations excluded from eligibility as affiliated corporations, which includes 80/20 corporations. Subsection (2) states ***311 a water's-edge combined group must treat the after-tax income from its 80/20 corporations as dividends received from foreign corporations for Montana tax purposes. Nothing in the text of Subsection (2) addresses the actual dividends 80/20 corporations might distribute to the water's-edge combined group, however.
¶25 Subsection (5) addresses deemed distributions under I.R.C. § 78 and "corresponding amounts with respect to dividends considered received under subsection (2)." ExxonMobil argues this language refers to actual dividends from 80/20 corporations. For this to be true, the "corresponding amounts" of deemed distributions under I.R.C. § 78 "considered received under subsection (2)" must refer to actual dividend distributions from 80/20 corporations. To explore ExxonMobil's argument, we must untangle what deemed distributions under I.R.C. § 78 are.
¶26 From 2008-2010, I.R.C. §§ 901, 902, and 960 (2010) generally allowed a domestic corporation to receive a federal tax credit for taxes its foreign subsidiary paid to a foreign government. I.R.C. § 78 (2010) required the domestic corporation receiving the federal foreign tax credit to "gross-up" its income (i.e., increase its net income value) by an amount equal to the credit.[3] The statute required the domestic corporation to deem the amount of the credit as a dividend received from its foreign subsidiary (a deemed distribution). Practically speaking, the deemed distributions reflected what the foreign subsidiary paid in foreign taxes. If the foreign subsidiary did not have to pay foreign taxes, then, theoretically, it could have distributed that additional available income to its domestic owner. Because I.R.C. §§ 901, 902, and 960 (2010) allowed the domestic corporation to receive a tax credit for the foreign taxes its foreign subsidiary paid, I.R.C. § 78 (2010) required the domestic corporation to treat the credit as though it were a distribution from the foreign subsidiary-that is, a deemed distribution.
¶27 Returning to Subsection (5), the text simply allows a water's-edge combined group to exclude I.R.C. § 78 (2010) deemed distributions from the group's income. Because 80/20 corporations could also receive a foreign tax credit and be subject to the gross-up provisions under I.R.C. § 78 (2010), Subsection (5) also allows the ***312 water's-edge combined group to exclude the 80/20 corporations' I.R.C. § 78 (2010) deemed distributions from the group's apportionable income. Therefore, the "corresponding amounts with respect to dividends considered received under subsection (2)" only refer to whatever deemed distributions the 80/20 corporations might have received pursuant to I.R.C. § 78 (2010) with respect to the 80/20 corporations' after-tax net income. ExxonMobil incorrectly argues this language encompasses actual dividends a water's-edge combined group received from 80/20 corporations. Subsection (5) makes no mention of such actual dividends; Subsection (5) is nothing more than an income exclusion for the federal gross-up for foreign tax credits under I.R.C. § 78. Accordingly, having reviewed each subsection of § 15-31-325, MCA, we conclude none of them expressly address actual dividends received from an 80/20 corporation. Moreover, *414 we conclude the Legislature did not expressly prohibit I.R.C. § 243 deductions.
¶28 The Department points us to the statute's prefatory language stating "dividends must be treated as follows" and asks us to conclude the language evinces a legislative intent to comprehensively address all dividends received by a water's-edge combined group, regardless of form. The Department argues this broad language indicates ExxonMobil cannot utilize I.R.C. § 243 deductions because the Legislature expressly provided for the treatment of all dividends under the statute; therefore, ExxonMobil is entitled to exclude only 80% of the dividends it received from its 80/20 corporations from its apportionable income under § 15-31-325(4), MCA.
¶29 The Department's position, however, would require this Court to "insert what has been omitted" into the framework of § 15-31-325, MCA. See § 1-2-101, MCA. The particular provisions of § 15-31-325, MCA, (e.g., Subsections (1), (2), and (3)) specifically address which dividends are "apportionable under [the] section," and those dividends are 80% excludable from the water's-edge combined group's apportionable income. See 15-31-325(4), MCA. However, none of the three subsections that affirmatively incorporate certain dividends into apportionable income address actual dividends from 80/20 corporations. In fact, none of the statute's subsections do. Even if the Department's contention that the statute generally addresses these types of dividends were true, there would be no way for us to determine whether the dividends are includable or excludable from income without adding language to the statute itself. The Department essentially asks us to insert language into the statute that apportions actual dividends from 80/20 corporations, and we decline to do so. See § 1-2-101, MCA.
***313 ¶30 Though complex, § 15-31-325, MCA, is clear, not susceptible to multiple constructions, and its plain language makes no reference to I.R.C. § 243 or actual dividends a water's-edge combined group receives from 80/20 corporations. We presume the Legislature was fully aware of Baker Bancorporation , 202 Mont. at 98-99, 657 P.2d at 92, where we affirmed I.R.C. § 243 deductions were available to Montana taxpayers, when the Legislature enacted the water's-edge legislation and the dividend scheme. See Musselshell Ranch Co. , ¶ 14. The Legislature knew that if it did not expressly prohibit the I.R.C. § 243 deduction, then corporations could still avail themselves of it. It did not address the I.R.C. § 243 deduction in § 15-31-325, MCA, nor did it address the treatment of actual dividends from 80/20 corporations elsewhere in the water's-edge provisions. See generally §§ 15-31-321 to -326, MCA. Therefore, I.R.C. § 243 is still applicable. We conclude ExxonMobil may deduct the actual dividends it receives from its 80/20 corporations for purposes of Montana taxation through I.R.C. § 243. The District Court erred when it affirmed the Department's determination that ExxonMobil was only entitled to an 80% exclusion for the dividends it received from its 80/20 corporations.
CONCLUSION
¶31 Unless the Legislature expressly provides otherwise, a corporation is entitled to federal deductions for purposes of computing its Montana tax liability, including the federal dividend deduction under I.R.C. § 243. The plain language of § 15-31-325, MCA, does not expressly proscribe I.R.C. § 243 deductions, nor does it address whether water's-edge combined groups should include or exclude 80/20 corporations' actual dividends from the group's combined income. Therefore, multinational corporations filing under the water's-edge provisions may exclude actual dividends they receive from 80/20 corporations under I.R.C. § 243. The Department erred by determining ExxonMobil was entitled to only an 80% exclusion for the dividends at issue, and the District Court erred by affirming the Department's determination. We reverse and hold ExxonMobil correctly excluded 100% of the actual dividends it received from its 80/20 corporations when it filed its water's-edge combined group returns for tax years 2008-2010.
We concur:
JIM RICE, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

The District Court held the Department's interpretation of the statutes warranted a deferential standard of review, citing Somont Oil Co. v. King , 2012 MT 207, ¶ 18, 366 Mont. 251, 286 P.3d 585 ("We apply a deferential standard of review to an agency's interpretation in matters of its expertise."). However, "no discretion is involved when a tribunal arrives at a conclusion of law-the tribunal either correctly or incorrectly applies the law." Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist. , 2008 MT 377, ¶ 18, 346 Mont. 507, 198 P.3d 219 (quoting Steer, Inc. v. Dep't of Revenue , 245 Mont. 470, 474, 803 P.2d 601, 603 (1990) ). The parties do not dispute the issue on appeal is purely one of statutory construction. The District Court accordingly erred when it deferred to the Department's interpretation of the statutes. We therefore review the Department's and the District Court's conclusions of law to determine whether they are correct. Bitterroot River Protective Ass'n , ¶ 18.

While the foreign subsidiary is not included in the water's-edge combined group, § 15-31-325(3), MCA, may still consider the income the foreign subsidiary earns to be a dividend from a foreign corporation. Nevertheless, the water's-edge provisions treat the foreign subsidiary's income differently than the income earned by corporations includable in the water's-edge combined group.

The Tax Cuts and Jobs Act, Pub. L. No. 115-97, § 131 Stat. 2054 (2017), repealed I.R.C. § 902 and amended I.R.C. §§ 78, 901, and 960. The current provisions still allow for a federal tax credit for taxes a domestic corporation's foreign subsidiary pays to a foreign government and still require the domestic corporation to gross-up its income by the credit amount. I.R.C. §§ 78, 901, 960 (2017).