

DA 13-0181

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 328

SHERRI ROBERTS,

        Plaintiff and Appellant,

    v.

STATE OF MONTANA BOARD OF LABOR
APPEALS; LAME DEER PUBLIC SCHOOL
DISTRICT #6,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Cause No. DV 2010-46
Honorable George W. Huss, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Richard O. Harkins, Attorney at Law, Ekalaka, Montana

        For Appellee:

            Jeffrey A. Weldon, Felt, Martin, Frazier & Weldon, P.C.,
Billings, Montana

Submitted on Briefs:  October 2, 2013
Decided:  November 5, 2013

Filed:

_____
                   Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Sherri Roberts appeals from an order of the Sixteenth Judicial District Court, Rosebud County, affirming the determination of the Board of Labor Appeals that she is disqualified from receiving unemployment benefits.  We affirm.

¶2    We restate the following issues presented on appeal:

¶3    Issue One:  Whether the District Court erred when it concluded that the findings of fact adopted by the Board of Labor Appeals were supported by substantial evidence.

¶4    Issue Two:  Whether the District Court erred when it concluded that Roberts was discharged due to misconduct and is therefore ineligible to receive unemployment benefits.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    Sherri Roberts was hired as a vocational agricultural teacher at Lame Deer High School in the fall of 2005.  She also served as faculty adviser for the school's chapter of the National FFA Organization (formerly known as Future Farmers of America).  Roberts's first year went well, but her relationship with the superintendent of the Lame Deer School District soon became strained.  A new superintendent, Daniel Lantis, was hired in the fall of 2007.  Despite this change of leadership, Roberts's conflict with school administration continued, particularly with regard to the use of FFA funds.  Lantis objected to the FFA's proposed purchase of animals to be kept on school grounds, citing inadequate facilities and liability concerns.  Roberts maintained that FFA funds were independent and not subject to School District control.

2

¶6      In April of 2008, Roberts's contract came before the Board of Trustees (Board) for renewal for a fourth consecutive year, which would also grant her tenure. Lantis recommended non-renewal of her contract. The Board rejected this recommendation at its meeting on April 8, 2008, but also did not immediately offer to renew Roberts's contract. Two weeks later, Roberts filed a complaint against Lantis, alleging that his recommendation for non-renewal constituted bullying and harassment. The Board requested an investigation of the matter. Meanwhile, Roberts's contract was automatically renewed as a result of the Board's rejection of the recommendation for non-renewal, and as a result, she attained tenure.

¶7      The conflict between Lantis and Roberts continued into the fall of 2008. Roberts believed that a renovation of the school's shop building then in progress had rendered the facility unsafe for use by her students. A meeting between Lantis and Roberts on August 28, 2008, to discuss the renovation became hostile, and Lantis reprimanded Roberts for what he believed to be unprofessional conduct.

¶8      On March 3, 2009, the Board received the results of its investigation into Roberts's complaint against Lantis. The Board voted unanimously to deny the grievance. Around this time, Lantis was also dealing with personal issues including the illness and death of his wife. The Board did not offer him a new contract in the spring, but his contract was ultimately renewed in June of 2009.

¶9      During the 2008-09 school year, Roberts learned of a loan program operated by the Montana Department of Agriculture (MDOA) and intended specifically for student FFA chapters. She applied for a $12,000 loan on behalf of the Lame Deer FFA for the

3

purpose of establishing a hay cutting business. The principal of the high school approved of the project, and Roberts did not believe that any further involvement from the School District was required. MDOA approved Roberts's proposal, and on July 13, 2009, Roberts signed a promissory note as an authorized representative of the Lame Deer FFA. She also obtained the signature of an assistant principal and provided MDOA with the School District's tax identification number. She then opened a checking account into which she deposited the loan proceeds. Two signatures were required to write checks from the account. Roberts and selected student FFA members were authorized to sign the checks.

¶10 Lantis became aware of the MDOA loan and FFA account in early August 2009, when a bank statement and printed checks were mailed to the school. As a student activity, the FFA chapter was subject to School District financial management policy 7425, which required all student activity funds to be deposited in an account maintained by the School District. Faculty advisers, including Roberts, were informed of this policy each year.

¶11 At 5:30 p.m. on August 11, 2009, Lantis delivered a letter to Roberts informing her that the separate account she had opened for the FFA funds was in violation of School District policy regarding student activity accounts. He directed her to turn over the funds and documentation of all account activity by 8:30 a.m. the following morning. Roberts did not comply with the request, claiming that it was impossible for her to do so because the bank did not open until 9:00 a.m. On the afternoon of August 12, 2009, Lantis informed Roberts that she was suspended with pay until further notice.

4

¶12 Roberts and her attorney met with Lantis and counsel for the School District on or about August 27, 2009, at which time Lantis restated his demand that Roberts turn over the funds and all documentation to the School District. Roberts provided documentation of account activity, but did not turn over the funds. She claimed that she did not have the authority to transfer the funds without permission of the students in the FFA. She also claimed that asking one of the students to co-sign a check would require her to act as FFA adviser in violation of the terms of her suspension. In an e-mail to Roberts's attorney, counsel for the School District again stated that Roberts needed to turn over the funds. Roberts never took any action to turn over the funds to the School District, despite repeated requests.

¶13 On September 4, 2009, Roberts went to the bank and obtained counter checks for the account. She and a student FFA member signed two checks, totaling $812.82, made out to Roberts. Roberts states that these checks were to reimburse her for expenses she had incurred in setting up the hay cutting business.

¶14 On October 27, 2009, Lantis recommended that the Board terminate Roberts's employment. A hearing was held November 16, 2009, at which the Board accepted Lantis's recommendation and terminated Roberts's employment with the School District. Roberts filed for unemployment insurance benefits soon after. The Montana Department of Labor and Industry (Department) initially determined that she was eligible to receive benefits. The School District requested that the Department review its determination. Upon review, the Department maintained that Roberts was eligible to receive benefits.

¶15 The School District then appealed the determination of the Department to a hearing officer. A ten-hour hearing was held on June 29, 2010. The hearing officer made 29 findings of fact, on the basis of which she concluded that Roberts had been discharged for misconduct and was ineligible to receive unemployment insurance benefits. Roberts appealed to the Board of Labor Appeals (BLA), which held a hearing on September 8, 2010. The BLA found that the hearing officer's findings of fact were sufficiently supported by the record and that she had correctly applied the law to the facts. The BLA therefore adopted the findings of the hearing officer and affirmed the determination that Roberts was ineligible to receive unemployment insurance benefits.

¶16 Roberts then appealed the decision of the BLA to the District Court. The District Court found that the findings of fact made by the hearing officer and adopted by the BLA were supported by substantial evidence, and that the hearing officer and the BLA had correctly applied the law in determining that Roberts was discharged for misconduct. The District Court therefore sustained the determination of the BLA. Roberts then appealed to this Court.

**STANDARD OF REVIEW**

¶17 On judicial review, the findings of the BLA must be treated as conclusive if supported by substantial evidence and in the absence of fraud. Section 39-51-2410(5), MCA; *Johnson v. W. Transp., LLC*, 2011 MT 13, ¶ 16, 359 Mont. 145, 247 P.3d 1094. Substantial evidence may be less than a preponderance of the evidence. *Johnson*, ¶ 17. If the findings of the BLA are supported by substantial evidence, the reviewing court is limited to considering questions of law. Section 39-51-2410(5), MCA. Whether the facts

6

of a case demonstrate misconduct is a legal conclusion that is reviewed for correctness. *Somont Oil Co. v. King*, 2012 MT 207, ¶ 11, 366 Mont. 251, 286 P.3d 585.

## DISCUSSION

¶18 *Issue One: Whether the District Court erred when it concluded that the findings of fact by the Board of Labor Appeals were supported by substantial evidence.*

¶19 The findings of the BLA, if supported by substantial evidence, must be treated as conclusive "even when there is also substantial evidence or even a preponderance of the evidence to the contrary." *Johnson*, ¶ 17. A reviewing court may not, on appeal, substitute its own view of the evidence, determine which evidence is more substantial, or determine where the preponderance of the evidence lies. *Johnson*, ¶ 18.

¶20 In this case, the hearing officer made 29 findings of fact, which were later adopted by the BLA. The hearing officer heard testimony and arguments for ten hours and accepted into evidence over one hundred pages of documents. The District Court reviewed the full record and summarized its review in a 29-line table, wherein it identified portions of the record corresponding to each finding of fact. The District Court clearly established that substantial evidence did exist in support of each finding. The District Court correctly did so without attempting to reweigh the evidence or substitute its own judgment. This Court has also reviewed the full record, and we affirm the conclusion of the District Court that the findings of fact are supported by substantial evidence. Having determined that there is substantial evidence in the form of documents and sworn testimony to support each of the findings adopted by the BLA, this Court must consider the findings conclusive. Section 39-51-2410(5), MCA.

7

¶21 Roberts argues that the findings were not supported by substantial evidence, because the hearing officer considered evidence that was irrelevant and therefore inadmissible. Roberts argues that the sole reason for her termination was her failure to turn over the funds in the FFA account as directed by Lantis on August 11, 2009, and therefore, any evidence regarding alleged misconduct prior to that date must be excluded.

¶22 A district superintendent who recommends the dismissal of a tenured teacher must supply to the trustees of the district a written statement of the reason or reasons for the recommendation. Section 20-4-204(1), MCA. Roberts acknowledges that Lantis's October 27, 2009 letter recommending termination of her employment referred to "a pattern of insubordinate behavior" prior to 2009. Evidence of prior alleged insubordination is therefore relevant to the reason for Roberts's discharge.

¶23 Nevertheless, the hearing officer did not rely on this evidence in making her determination. The hearing officer concluded that Roberts was discharged for her refusal to turn over the funds in the account and failure to follow School District policy regarding student activity funds. This conclusion is in accordance with Roberts's own view of the reasons for her dismissal. The hearing officer based this conclusion on her findings that School District policy required student activity funds to be deposited in an account maintained by the School District; Lantis informed Roberts of this policy; he requested that she turn over the funds; and she took no action to do so. These findings are well supported in the record and do not rely on evidence of alleged misconduct prior to 2009. We hold that the District Court did not err by concluding that the findings of fact adopted by the BLA were supported by substantial evidence.

8

¶24 *Issue Two: Whether the District Court erred when it concluded that Roberts was discharged due to misconduct and was therefore ineligible to receive unemployment benefits.*

¶25 An employee is disqualified from receiving unemployment insurance benefits if he or she has been discharged for misconduct. Section 39-51-2303, MCA. Specific examples of misconduct include "insubordination showing a deliberate, willful or purposeful refusal to follow the reasonable directions or instructions of the employer" and "violation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." Admin. R. M. 24.11.461(1)(a), (g).[1]

¶26 School District financial management policy 7425 required student activity funds to be deposited in an account maintained by the School District. This policy was consistent with the requirements of § 20-9-504(1), MCA, which provides that "[a]ll extracurricular money of a pupil organization of the school must be deposited and expended by check from a bank account maintained for the extracurricular fund." The statute also requires implementation of an accounting system recommended by the Superintendent of Public Instruction. Section 20-9-504(2), MCA. The policy of the School District was a reasonable rule, consistent with state law, intended to safeguard student funds.

---

[1] These specific instances of misconduct were added to the statutory definition of misconduct, § 39-51-201(19), MCA, in 2013. No statutory definition had yet been adopted at the time of the events at issue in this case; therefore, we rely on the definition provided in the administrative rule, which was in effect at that time.

9

¶27 Faculty advisers, including Roberts, were provided an orientation on School District policy regarding the management of student activity funds each year. Roberts was also personally informed of the policy by Lantis's letter of August 11, 2009, which notified her that by opening a separate account for the FFA, she had acted in violation of School District policy. Despite being informed that she had violated School District policy, Roberts never took any action to comply with the policy by moving the funds to the student activity account as requested. Roberts knowingly violated a reasonable rule of the School District. The District Court correctly concluded that this was misconduct.

¶28 After being informed that her actions were in violation of School District policy, Roberts was directed to transfer the FFA funds to the School District on multiple occasions. Lantis first asked Roberts to turn over the funds in his letter of August 11, 2009. Roberts did not do so. In a meeting on August 27, 2009, Lantis again asked Roberts to turn over the funds. Roberts provided some documentation, but did not turn over the funds as instructed. In an e-mail to Roberts's attorney following that meeting, counsel for the School District again stated that Roberts needed to turn over the funds. Roberts did not do so.

¶29 Roberts argues that the repeated instructions to turn over the funds were not reasonable, and therefore, her failure to comply did not constitute misconduct. Roberts claims that the request made in Lantis's August 11, 2009 letter was unreasonable because it demanded compliance by 8:30 a.m., and the bank did not open until 9:00 a.m. Roberts does not explain why she needed to go to the bank, and she did not at that time provide documentation, such as deposit receipts, which should already have been in her

possession. Moreover, despite the 8:30 a.m. deadline, Roberts was not actually suspended until 1:30 p.m. on August 12, giving her more than four hours to visit the bank, if necessary, after its opening.

¶30 Lantis continued to request that Roberts turn over the funds after the August 12 deadline. She claims that these later requests were also unreasonable, because her suspension from FFA duties made it impossible for her to transact any business on the FFA account. She claims that it was impossible for her to write a check transferring the funds to the School District because the school had kept the printed checks issued by the bank. She claims that her suspension made it impossible for her to meet with the FFA students to ask one of them to co-sign a check. She also claims that the student FFA members refused to give control of the funds to the School District.

¶31 Despite her claim that it was utterly impossible to access the account or conduct any FFA business during her suspension, Roberts obtained counter checks from the bank and co-signed, with an FFA student, two checks payable to herself for a total of $812.82. This action belies her claim that she was unable to write a check or meet with FFA students. Roberts claims that she was unable to comply with School District policy during her suspension, but she was nevertheless fully able to secure reimbursement for herself from FFA funds. This reflects a purposeful refusal to follow Lantis's reasonable direction to turn over the funds in the FFA account. Furthermore, her claim that she, as a teacher, was unable to instruct her students to follow Montana law and the policies of the School District is unreasonable. The District Court correctly concluded that her refusal to turn over the funds as directed was misconduct.

11

¶32 The findings of fact adopted by the BLA are supported by substantial evidence in the record. Those facts demonstrate that Roberts acted in violation of a reasonable School District policy of which she was aware, and purposefully refused to follow the reasonable directions of the School District superintendent. These actions constituted misconduct, and she is therefore ineligible to receive unemployment insurance benefits.

¶33 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE